## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| MAX WEINSTEIN, individually and on behalf of all others similarly situated, <br><br>                        Plaintiff, <br><br>      v. <br><br> SEATGEEK, INC., <br><br>                        Defendant. | Civil Action No.:  9:25-cv-81314 <br><br> **CLASS ACTION COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

Plaintiff Max Weinstein ("Plaintiff") brings this action on behalf of himself, and all others similarly situated against SeatGeek, Inc. ("SeatGeek" or "Defendant").  Plaintiff makes the following allegations pursuant to the investigation of his counsel and based upon information and belief, except as to the allegations specifically pertaining to himself, which are based on personal knowledge.

### <u>NATURE OF THE ACTION</u>

1.      This is a class action on behalf of all persons that purchased resale tickets from SeatGeek's website to a multiday or multievent concert, entertainment event, permanent exhibition, or recreational activity within a park or entertainment complex in the State of Florida.

2.      For years, Defendant has overcharged customers on its website in violation of the Florida Deceptive and Unfair Trade Practices Act.  Under Florida law, "[a] person or entity that offers for resale or resells any ticket <u>may charge only $1 above</u> the admission price charged therefor by the original ticket seller of the ticket for the following transactions: … (b)   Multiday or multievent tickets to a park or entertainment complex or to a concert, entertainment event, permanent exhibition, or recreational activity within such a park or complex, including an

entertainment/resort complex as defined in s. 561.01(18)." Fla. Stat. Ann. § 817.36(1)(b) (emphasis added).

3.      SeatGeek is subject to this law and yet it charges more than $1.00 over the original ticket seller's admission price anyway.  SeatGeek resells tickets for multiday and multievent experiences, such as concerts or sporting events, held within parks and entertainment complexes in the State of Florida.  Whenever a consumer visits https://seatgeek.com/ to buy a ticket to a multiday or multievent experiences in an entertainment complex or park in the state of Florida, SeatGeek resells those tickets from the original seller with prices over $1.00 above the admission price charged therefor by the original ticket seller.  SeatGeek is thus violating Section 817.36.

4.      Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."  Fla. Stat. Ann. § 501.204(1).  SeatGeek's practice of charging over $1.00 than the original ticket seller's price of admission is a *per se* violation of FDUTPA.  The FDUTPA provides that a violation may be based upon "any law, statute, rule, regulation, or ordinance" which proscribes such conduct in trade or commerce.  Fla. Stat. Ann. § 501.203(3)(c).  And here the violation is based on Florida Statute § 817.36(1)(b), which, as noted, says "[a] person or entity that offers for resale or resells any ticket may charge only $1 above the admission price charged … for … [m]ultiday or multievent tickets to a park or entertainment complex or to a concert, entertainment event, permanent exhibition, or recreational activity within such a park or complex."

5.      For these reasons, Plaintiff seeks relief in this action individually, and on behalf of all other ticket purchasers from Defendant's website, https://seatgeek.com/, for actual damages, reasonable attorneys' costs and fees, and injunctive relief under Fla. Stat. § 501.204.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005, because at least one member of the Class, as defined below, is a citizen of a different state than Defendant, there are more than 100 class members, and the aggregate amount in controversy exceeds $5,000,000 exclusive of interest and costs.

7.      This Court has personal jurisdiction over Defendant because the wrongful conduct against Plaintiff occurred in this District.

8.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District, and because Defendant transacts business and/or has agents within this District.

## PARTIES

9.      Plaintiff Max Weinstein is an individual consumer who, at all times material hereto, was a domiciliary of Boca Raton, Florida.  Plaintiff purchased a multiday event ticket to gain attendance to the 2025 Formula 1 Miami Grand Prix on April 23, 2025 and May 4, 2025 through Defendant's website, https://seatgeek.com/.  The transaction flow process he viewed on Defendant's website was substantially similar to that as depicted in Figures 1 through 7 in this Complaint.

10.     Defendant SeatGeek, Inc. is a New York corporation with its principal place of business in New York, NY.  Defendant owns and operates the website, https://seatgeek.com/.

## RELEVANT FACTUAL ALLEGATIONS

11.     When a consumer visits Defendant's website, https://seatgeek.com/, on the main page, he can browse different entertainment events occurring in parks and entertainment complexes in his area.  The consumer can browse the types of events, such as sporting or music events, to see more specific options.    Defendant offers for resale tickets for many events that contain a multiday or multievent component, such as tournaments or music festivals that occur over the course of a weekend.  *See* Figures 1 and 2, below and next page.



**Figure 1**



**Figure 2**

12.     After a consumer selects the type of entertainment event he is interested in purchasing tickets for, such as Formula 1 racing events, he is taken to a screen which shows those events in his area.  *See* Figure 3, next page.





**Figure 3**

13.     After a consumer selects the specific event he wishes to purchase tickets for, such as the 2026 Miami Grand Prix, he is shown the variety of tickets available for purchase. *See* Figure 4, next page.



**Figure 4**

14.     When a consumer clicks the section and row he is interested in purchasing tickets to sit in, he is taken to another page which presents the exact ticket available for purchase.  The consumer can click on that ticket to select it and proceed to check out.  *See* Figures 5 and 6, next page.



**Figure 5**



**Figure 6**

15.     Once the consumer presses the "Continue" button, Defendant prompts him to input his contact information.   *See* Figure 7, below.   On this page, Defendant reveals that it charges $1,433.00 for the base ticket, and $285.06 in "Fees."   *See id.*   From this point, the consumer can continue clicking the buttons to complete his purchase, inputting his payment information, never knowing that SeatGeek is violating Florida law with its ticket pricing practices.

**Figure 7**



16.     If a consumer instead visits the Formula 1 Miami Grand Prix 2026 website, https://f1miamigp.com/, to purchase his ticket directly from the original seller, he can select tickets in the same section and row which are a substantially lower price than SeatGeek charges.   *See* Figure 8, below.



**Figure 8**

17.     When a consumer presses "Add to Cart," he is taken to a Ticketmaster sign in page to log in.   Once the consumer signs in, he is presented with the total price and are prompted to choose a payment method.   *See* Figure 9, next page.



**Figure 9**

18.    Thus, if a consumer looks to purchase the *very same 3-day ticket* for the *same multi-day racing event* in the *same section and row* from the Miami Grand Prix's website directly, he is quoted a lower base price—without the addition of any fees.  *See* Figure 10, next page (showing comparison between SeatGeek and Miami Grand Prix's Website).

**Total Cost quoted from SeatGeek**          **Total Cost quoted from Miami Grand Prix**



**Figure 10**

19.      In Figure 9, it shows that the Miami Grand Prix only charges $1,250.00 for a 3-day ticket, without any additional fees, for seats in section T1-3, row 2.  This $1,250.00 price point is consistent amongst every seat in section T1-3, row 2.   Whereas SeatGeek charges customers $1,433.00 for the base ticket, and quotes customers $285.06 in "Fees" for a 3-day pass in the same section and row.  In other words, SeatGeek violates Fla. Stat. Ann. § 817.36(1)(b) before it even adds fees to its resale admission price by charging consumers over $1.00 "above the admission price charged therefor by the original ticket seller of the ticket."

20.   SeatGeek engages in this same price gauging when it resells tickets for different types of multievent or multiday recreational activities held in a park or entertainment complex in Florida, such as music festivals. *See* Figure 11, below.



**Figure 11**

21.     After a consumer selects the specific music festival he wishes to purchase tickets for, such as III Points Music Festival, he is shown the variety of ticket types available for purchase. *See* Figure 12, below.



**Figure 12**

22.     After the consumer clicks the "Go to checkout" button on the 2-day pass ticket, he is presented with a page prompting him to input his contact information.  *See* Figure 13, below. On this page, Defendant reveals that it charges $466.0 for the base ticket, $101.27 in "Fees," and $17.44 in "Delivery Fees."  *See id.*  From this point, the consumer can continue clicking the buttons to complete his purchase, inputting his payment information, never knowing that SeatGeek is violating Florida law with its ticket pricing practices.



**Figure 13**

23.     If a consumer looks to purchase the *very same ticket* for the *very same music festival* from the music festival's website directly, he is provided a substantially lower base price—with fees half the amount quoted by Defendant.  *See* Figures 14 and 15, below; *see also* Figure 16, next page (showing comparison between SeatGeek and III Points' Music Festival's Website).



**Figure 14**

**Figure 15**

**Total Cost quoted from SeatGeek**     **Total Cost quoted from III Points' Website**



**Figure 16**

24.     In Figures 14 and 15, it shows that III Points only charges $269.00 for the base 2-day general admission ticket, a $40.00 fee, and a $7.50 shipping fee.  Whereas SeatGeek charges customers $466.00 for a base 2-day pass, and additionally quotes customers $101.27 in "Fees" and $17.44 in "Delivery Fees."  In other words, SeatGeek again violates Fla. Stat. Ann. § 817.36(1)(b) before it even adds its substantial fees to its resale admission price by charging consumers over $1.00 "above the admission price charged therefor by the original ticket seller of the ticket."

25.     As shown in Figures 1 through 16, SeatGeek consistently charges well above the $1.00 limit on the tickets it resells, in its base pricing *and* in extra fees, to multievent or multiday ticket passes held within parks or entertainment complexes in the State of Florida in violation of Fla. Stat. Ann. § 817.36(1)(b).

## FLORIDA'S RESALE OF TICKETS LAW

26.     Effective June 29, 2010, Florida enacted a statute, which provides that "[a] person or entity that offers for resale or resells any ticket may charge only $1 above the admission price charged therefor by the original ticket seller of the ticket for the following transactions: . . . (b) Multiday or multievent tickets to a park or entertainment complex or to a concert, entertainment

event, permanent exhibition, or recreational activity within such a park or complex, including an entertainment/resort complex as defined in s. 561.01(18)." Fla. Stat. Ann. § 817.36(1)(b).

27.     By violating Florida's Resale of Tickets Law, Defendant has violated Florida's Deceptive And Unfair Trade Practices Act ("FDUTPA"), which provides that "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." Fla. Stat. Ann. § 501.204.

28.     The FDUTPA provides that a violation may be based upon "any law, statute, rule, regulation, or ordinance" which proscribes such conduct in trade or commerce. Fla. Stat. Ann. § 501.203(3)(c).

## CLASS REPRESENTATION ALLEGATIONS

29.     Plaintiff seeks to represent a class defined as all individuals who purchased resale tickets from Defendant's website, https://seatgeek.com/, and paid an excess of $1.00 above the admission price charged therefor by the original seller of the ticket to SeatGeek (the "Class") for a multiday or multievent ticket to a park or entertainment complex, or to a concert, entertainment event, permanent exhibition, or recreational activity in such park or complex within the State of Florida. Excluded from the Class is any entity in which Defendant has a controlling interest, and officers or directors of Defendant.

30.     Members of the Class are so numerous that their individual joinder herein is impracticable. On information and belief, members of the Class are at least in the thousands. The precise number of Class members and their identities are unknown to Plaintiff at this time but may be determined through discovery. Class members may be notified of the pendency of this action by mail, email, and/or publication through the distribution records of Defendant.

31.     Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members.  Common legal and factual questions include, but are not limited to: (a) whether Defendant charged more than $1.00 above the original ticket sellers' price in violation of Florida's Resale of Tickets Law, Fla. Stat. Ann. § 817.36(1)(b).

32.     The claims of the named Plaintiff are typical of the claims of the Class in that the named Plaintiff and the Class sustained damages as a result of Defendant's uniform wrongful conduct, based upon Defendant's unlawfully excessive resale prices charged for multiday or multievent tickets to a park or entertainment complex, or to a concert, entertainment event, permanent exhibition, or recreational activity in such park or complex within the State of Florida.

33.     Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the Class members he seeks to represent, he has retained competent counsel experienced in prosecuting class actions, and he intends to prosecute this action vigorously.  The interests of Class members will be fairly and adequately protected by Plaintiff and his counsel.

34.     The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class members.  Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability.  Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.  Individualized litigation also presents a potential for inconsistent or contradictory judgments.  In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability.  Class treatment

of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

### FIRST CAUSE OF ACTION
**Violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUPTA")**
**(Fla. Sta. Ann. § 501.204)**
**(On Behalf Of Plaintiff And The Class)**

35.     Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

36.     Plaintiff brings this claim individually and on behalf of the members of the Class against Defendant.

37.     Defendant violated Florida's Deceptive And Unfair Trade Practices Act ("FDUTPA") by violating Florida's Resale of Tickets Law.  The FDUTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."  Fla. Stat. Ann. § 501.204.

38.     The FDUTPA provides that a violation may be based upon "any law, statute, rule, regulation, or ordinance" which proscribes such conduct in trade or commerce. Fla. Stat. Ann. § 501.203(3)(c).

39.     Defendant violated Florida's Resale of Tickets Law, Fla. Stat. Ann. § 817.36(1)(b), by charging more than $1.00 above the original ticket sellers' price on its multiday or multievent tickets to a park, entertainment complex, or to a concert, entertainment event, permanent exhibition, or recreational activity in that park or complex within the State of Florida, as depicted in Figures 1 through 16 of this Complaint.

40.     Defendant resells "[m]ultiday or multievent tickets to a park or entertainment complex or to a concert, entertainment event, permanent exhibition, or recreational activity within such a park or complex, including an entertainment/resort complex as defined in s. 561.01(18)."

Fla. Stat. Ann. § 817.36(1)(b).  In particular, Defendant resells tickets to multiday or multievent entertainment experiences in parks and complexes for hundreds of events in the State of Florida, such music or sporting events that provide admission to multiple days or events through the purchase of one ticket.

41.     On April 23, 2025 and May 4, 2025, Plaintiff purchased multiday event tickets to gain attendance to the 2025 Formula 1 Miami Grand Prix through Defendant's website, https://seatgeek.com/.  Plaintiff paid the total price provided by Defendant, totaling substantially more than the cost of the tickets by the original seller.  For his April 23, 2025 purchase of Formula 1 tickets, Plaintiff paid SeatGeek $539.28 in fees—or $528.28 more than he was legally required to pay. For his May 4, 2025 purchase of Formula 1 tickets, Plaintiff paid SeatGeek $6,310.84 in fees—or $6,309.84 more than he was legally required to pay. In other words,  Plaintiff was harmed by paying Seatgeek's illegally appropriated surplus. The transaction flow process he viewed on Defendant's website during those purchases was substantially similar to that as depicted in Figures 1 through 7 in this Complaint.

42.     At the time Plaintiff purchased his tickets, he was not aware that Defendant's resale fees were unlawfully high under the FDUTPA.  He was not browsing websites in search of legal violations.  Instead, Plaintiff was browsing Defendant's website because he sincerely intended to purchase bus tickets, and he did, in fact, purchase those tickets.

43.     On behalf of himself and members of the Class, Plaintiff seeks to enjoin the unlawful acts and practices described herein, to recover his actual damages and reasonable attorneys' fees, and any other relief the Court deems proper under the FDUTPA.

**COUNT II**
**Unjust Enrichment**
**(On Behalf Of Plaintiff and The Class)**

44.     Defendant charged and collected a higher amount for the sale of resale tickets to a multiday or multievent concert, entertainment event, permanent exhibition, or recreational activity within a park or complex in the State of Florida than the permitted amount allowed on tickets resold by Defendant on its website because the amount charged exceeded $1.00 beyond the total amount of the ticket sold by the original seller.

45.     Defendant has been unjustly enriched in that it received and retained the benefit of funds to which it was not entitled and received in violation of Florida law.

46.     Said funds were conferred on Defendant by Plaintiff and the Class members under a mistake of fact due to Defendant's misrepresentations, and unlawfully obtained to the detriment of Plaintiff and the Class members.

47.     Defendant's retention of these funds is unjust because Defendant misrepresented the purpose of the fees, and collected more fees than allowed under Florida law.

48.     Allowing Defendant to retain the aforementioned benefits violates fundamental principles of justice, equity, and good conscience.

49.     Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiff and the Class is unjust and inequitable, Defendant must pay restitution to Plaintiff and the Class for their unjust enrichment, as ordered by the Court.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

(a)     For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Class and Plaintiff's attorneys as Class Counsel to represent the Class members;

(b)     For an order declaring that Defendant's conduct violates the statutes referenced herein;

22

(c)     For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

(d)     For compensatory and punitive damages in amounts to be determined by the Court and/or jury;

(e)     For prejudgment interest on all amounts awarded;

(f)     For an order of restitution and all other forms of equitable monetary relief;

(g)     For injunctive relief as pleaded or as the Court may deem proper; and

(h)     For an order awarding Plaintiff and the Class their reasonable attorneys' fees and expenses and costs of suit.

## JURY TRIAL DEMANDED

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury on any and all claims so triable.

Dated: October 23, 2025                     Respectfully submitted,

**BURSOR & FISHER, P.A**.

By:      */s/ Eleanor R. Grasso*
            Eleanor R. Grasso

Eleanor R. Grasso (State Bar No. 1065456)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email:  egrasso@bursor.com

Philip L. Fraietta (*pro hac vice* forthcoming)
50 Main Street, Suite 475
White Plains, NY 10606
Telephone: (914) 874-0710
Facsimile: (914) 206-3656
Email:  pfraietta@bursor.com

Stefan Bogdanovich (*pro hac vice* forthcoming)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-mail:  sbogdanovich@bursor.com

*Attorneys for Plaintiff*

23