**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**
**CASE NO. 9:25-cv-81314-EA**

MAX WEINSTEIN, individually and on
behalf of all others similarly situated,

     Plaintiff,

v.

SEATGEEK, INC.,

     Defendant.

_____/

## ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION

**THIS CAUSE** comes before the Court upon Defendant, Seat, ("Defendant") Motion to Compel Arbitration ("Motion"). [ECF No. 20]. The Motion has been fully briefed. The Court having reviewed the Motion, the Response in Opposition [ECF No. 28], the Reply in Support [ECF No. 33], the exhibits, the docket, and the relevant legal authorities and being otherwise fully advised in the premises, the Motion is hereby **GRANTED** for the reasons below.

### FACTUAL BACKGROUND

Plaintiff Max Weinstein ("Plaintiff"), on behalf of himself and a putative class, brings an action against Defendant Seatgeek, Inc. ("Defendant"), for injunctive and declaratory relief to halt Defendant's alleged unlawful practice of overcharging tickets resold on its website, as well as to recover monetary damages [ECF No. 1 at ¶¶ 2, 5, 43, & 49 and pages 22-23]. Plaintiff purchased tickets from Defendant's website on April 23, 2025, and May 4, 2025, for an amount allegedly substantially more than the cost of the tickets by the original seller [ECF No. 1 ¶ 41]. Defendant argues, and Plaintiff does not dispute, that when Plaintiff made this purchase from Defendant, Defendant's online check-out process featured the following text and button:

By clicking the "Pay" button below, you agree to our <u>Terms of Use</u>, and acknowledge having read our <u>Privacy Notice</u>.

Check out with affirm

[ECF No. 20 at page 9]. The underlined "Terms of Use" ("TOU") hyperlinked to an arbitration provision that contained the following language as part of the arbitration provision ("Arbitration Agreement"):

> **<u>IN PARTICULAR, IT [the TOU] CONTAINS AN ARBITRATION AGREEMENT WHICH WILL, WITH LIMITED EXCEPTIONS, REQUIRE DISPUTES BETWEEN US TO BE SUBMITTED TO BINDING AND FINAL ARBITRATION.</u> UNLESS YOU OPT OUT OF THE ARBITRATION AGREEMENT, DISPUTES BETWEEN YOU AND SEATGEEK WILL BE RESOLVED SOLELY ON AN INDIVIDUAL BASIS AND NOT AS A CLASS ARBITRATION, CLASS ACTION, ANY OTHER KIND OF REPRESENTATIVE PROCEEDING, OR BY JURY TRIAL.**

[ECF No. 20-1, Exh. A.] (brackets added) (bold and underlining and capitalized letters original).

## PROCEDURAL POSTURE

Defendant argues that the content and location of the text was sufficiently conspicuous by clicking the button that was located below the text hyperlinked to the terms and conditions, which button had to be clicked in order to continue completing the transaction. [ECF No. 20].

In response, Plaintiff argues that the terms were insufficiently conspicuous and the buttons that Plaintiff clicked during the course of the transaction did not constitute assent to the terms and conditions and cannot be unambiguously construed as his manifesting assent because the screens presented nowhere explicitly advised him that clicking would constitute assent to the terms and conditions. [ECF No. 28].

In reply, Defendant argues that it cited numerous cases where courts found that underlined, hyperlinked "terms of use" text sufficed to put a reasonably prudent person on inquiry notice. [ECF No. 33]. Defendant also argues that other courts, without requiring that the exact words in the adjacent instructions to be on the button, have found assent to be manifested by clicking a button that must be clicked in order to continue or complete the transaction. [ECF No. 33].

**ANALYSIS**

**RULE**

**STANDARD FOR A MOTION TO COMPEL ARBITRATION**

The Court "treat[s] motions to compel arbitration similarly to motions for summary judgment," viewing the facts in the light most favorable to the nonmovant. *Hearn v. Comcast Cable Commc'ns, LLC*, 992 F.3d 1209, 1215 n.3 (11th Cir. 2021); *see Bazemore v. Jefferson Cap. Sys., LLC*, 827 F.3d 1325, 1333 (11th Cir. 2016) ("We agree with our sister circuits that a summary judgment-like standard is appropriate and hold that a district court may conclude as a matter of law that parties did or did not enter into an arbitration agreement only if 'there is no genuine dispute as to any material fact' concerning the formation of such an agreement.").

**ELEMENTS OF A VALID ARBITRATION AGREEMENT**

The Federal Arbitration Act ("FAA") governs the validity of an arbitration agreement. *Walthour v. Chipio Windshield Repair, LLC*, 745 F.3d 1326, 1329 (11th Cir. 2014) (citation omitted). The FAA provides that a written agreement to arbitrate a controversy "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. When one party has failed, neglected, or refused to comply with an arbitration agreement, the FAA requires the federal court to compel arbitration upon proper motion. *See id.* § 4; *see also Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (observing that the FAA "mandates that district courts *shall* direct the parties to proceed to arbitration on issues as

to which an arbitration agreement has been signed") (emphasis in original). The FAA creates a "presumption of arbitrability" such that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Dasher v. RBC Bank (USA)*, 745 F.3d 1111, 1115–16 (11th Cir. 2014); *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) (observing that the FAA embodies a "liberal federal policy favoring arbitration agreements").

## BROWSEWRAP COMPARED WITH CLICKWRAP

Although the FAA governs the validity of an arbitration agreement, "state law governs the interpretation and formation of such agreements." *1 Emps. Ins. of Wausau v. Bright Metal Specialties, Inc.*, 251 F.3d 1316, 1322 (11th Cir. 2001) (citing *Perry v. Thomas*, 482 U.S. 483 (1987)). Florida law governing arbitration agreements, agreed to within the context of internet transactions, recognizes two common presentations: "browsewrap" and "clickwrap agreements." *MetroPCS Commc'ns, Inc. v. Porter*, 273 So. 3d 1025, 1028 (Fla. Dist. Ct. App. 2018). "A 'browsewrap' agreement occurs when a website merely provides a link to the terms and conditions and does not require the purchaser to click an acknowledgement during the checkout process. *Id.* "A 'clickwrap' agreement occurs when a website directs a purchaser to the terms and conditions of the sale and requires the purchaser to click a box to acknowledge that they have read those terms and conditions." *Id.* The purchaser can complete the transaction without visiting the page containing the terms and conditions." *Id.*

Browsewrap agreements, like the one here, are generally enforceable when "the hyperlink to the terms and conditions is conspicuous enough to place the user on inquiry notice." *Vitacost.com, Inc. v. McCants*, 210 So. 3d 761, 765 (Fla. Dist. Ct. App. 2017). In deciding whether browsewrap agreements like Defendant's are binding, courts applying Florida law ask whether the notice is "conspicuous enough to put a reasonably prudent person on inquiry notice." *Massage*

*Envy Franchising, LLC v. Doe*, 339 So. 3d 481, 484 (Fla. Dist. Ct. App. 2022) (quoting *Vitacost.com, Inc. v. McCants*, 210 So. 3d 761, 762 (Fla. Dist. Ct. App. 2017)). "Whether a party received reasonable notice is a fact-intensive inquiry, and for internet transactions "the design and content of the relevant interface" are especially relevant." *Eglin Fed. Credit Union v. Baird*, No. 1D2023-1866, 2024 WL 3956764, at *3 (Fla. Dist. Ct. App. Aug. 28, 2024) (quoting *Meyer v. Uber Technologies, Inc.*, 868 F.3d 66, 75 (2d Cir. 2017)). When assessing the design and content of the relevant interface, courts look to the position of the terms vis á vis the entire webpage, *Vitacost.com, Inc.*, 210 So. 3d at 765, whether the terms are bolded or in upper-case lettering, *M.Z. v. Carnival Corp.*, 239 So. 3d 756, 757 (Fla. Dist. Ct. App. 2018), and whether the user could make a purchase without the terms button in their line of sight, *Temple v. Best Rate Holdings LLC*, 360 F. Supp. 3d 1289, 1304 (M.D. Fla. 2018).

## APPLICATION

### Whether a Valid Arbitration Agreement Exists

The dispute between the parties concerns the validity of Plaintiff's acceptance of the terms and conditions containing the arbitration provision. This dispute can be further divided into two sub-issues: (1) whether the text hyperlinked to the terms and conditions was sufficiently conspicuous to put a reasonable person on inquiry notice and (2) whether any act or omission on the part of Plaintiff manifested his assent to the terms and conditions.

Before proceeding, it should be noted what the parties are not disputing with respect to the existence of a contract under Florida law: offer, consideration, and sufficient specification of essential terms. *See Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009). The parties also are not disputing whether an arbitrable issue exists or whether the right to arbitration has not been waived. *See Calcaterra v. Baptist Health S. Fla., Inc.*, 733 F. Supp. 3d 1349, 1352 (S.D. Fla.

2024). The parties also do not dispute that the agreement falls into the category of "browsewrap," as opposed to "clickwrap." Thus, the only issue remaining for the Court is that of acceptance.

### Acknowledging the Existence of Persuasive Authority on Both Sides

Both parties have also pointed to merely persuasive decisions by trial courts outside the Eleventh Circuit involving a screen with an appearance similar to the one at issue here. This Court is of the view that these decisions highlight the fact-intensive nature of the analysis before the Court and the real opportunity presented by the facts of this case for reasonable differences of opinion about whether the text at issue here is sufficiently conspicuous. Ultimately, however, the Court must use its discretion (which if appealed, would be reviewed for abuse of discretion) and not merely uncritically substitute the reasoning or discretion of fellow trial court jurists for its own. That said, this Court proceeds to explain why it has reached its conclusion by citing as support the reasoning of other jurists faced with similar facts.

### The Necessity That the Hyperlink is Sufficiently Conspicuous

Based on its review of the binding precedent that sets down the rules for determining the enforceability of browsewrap agreements and of the persuasive authorities presented by the parties that apply said rules, this Court finds that here, the hyperlink to the terms and conditions containing the arbitration provision was sufficiently conspicuous for putting a reasonably prudent person on inquiry of notice of said terms and conditions, "such that continued use of the service constitutes assent to the terms and conditions." *Bell v. Royal Seas Cruises, Inc.*, 2020 WL 5742189, at *6 (S.D. Fla. May 13, 2020). In support of its decision, the Court notes the commonalities among the instant case, *Rogolino v. Walmart, Inc.*, 2025 WL 396453 (S.D. Fla. Feb. 4, 2025) (Judge Cannon), *Adams v. Lashify, Inc.*, 689 F. Supp. 3d 1146, 1156–57 (M.D. Fla. 2023) (Judge Paul Byron), and *Bell v. Royal Seas Cruises, Inc.*, 2020 WL 5742189, at *6 (S.D. Fla. May 13, 2020). All four cases involve browsewrap agreements with hyperlinked text either directly above the button (along with, in two

instances, the transaction dollar amount) that must be clicked in order to either proceed to the next step of or complete the transaction. In all four cases, the hyperlinked text is smaller than the text in the button that must be clicked, but it is also underlined and unambiguously identifies itself as a link to the terms of the agreement (variously, "Terms of Use" and "Terms & Conditions"). In the foregoing orders either entered or approved by Judges Cannon, Byron, and Ruiz, it was determined that a reasonably prudent person would have been put on inquiry notice of the terms and conditions. The screens from all four cases are depicted together below:



**Reasonableness Standard Applied to Manifesting Assent**

Notwithstanding the Court's analysis of and decision on the issue of inquiry notice set forth above, the question remains whether Plaintiff did anything that constituted acceptance of the terms and conditions containing the Arbitration Agreement. This Court answers in the affirmative, that by clicking the button that had to be clicked in order to proceed with completing the transaction, Plaintiff manifested assent to the TOU.

As a preliminary matter, Plaintiff is entitled to have all reasonable factual inferences drawn in her favor, but that standard does not apply to whether the website design was sufficient to create a binding agreement to arbitrate because "[a] determination of the existence of a valid contract is a question of law for the court." *GEICO Indem. Co. v. Boike*, No. 06-cv-80219, 2006 WL 8435399, at *1 (S.D. Fla. Nov. 9, 2006) (citing *Acumen Constr., Inc. v. Neher*, 616 So. 2d 98, 99 (Fla. 2d DCA 1993) and *Caltagirone v. Sch. Bd. of Hernando Cty.*, 355 So. 2d 873 (Fla. 2d DCA 1978)). Accordingly, whether a particular act or omission on the part of Plaintiff constitutes acceptance is a question of law for the Court to decide, not a factual inference that the Court is required to draw in favor of the nonmovant.

It is well taken that the button that Plaintiff needed to click did not display the word "Pay" (either alone or together with other words), although the words directly above the button stated, "By clicking the 'Pay' button below, you agree to our Terms of Use and acknowledge having read our Privacy Notice." Plaintiff's argument is that clicking on a button whose text does not match the text of the relevant notice should be held as insufficient to constitute acceptance. Plaintiff does not deny the existence of trial court orders holding to the contrary, such as *Bell v. Royal Seas Cruises, Inc.*, 2020 WL 5742189, at *6 (S.D. Fla. May 13, 2020), where the magistrate judge (whose report was accepted) held that by clicking a button that read "Continue" below text saying, "I understand and agree . . ." to the terms and conditions, a reasonable user would have understood that clicking the button would constitute acceptance. Furthermore, in *MetroPCS*, the court held that the "continued use of the company's services" after receiving the text messages with the hyperlinked terms and conditions constituted assent. *MetroPCS Commc'ns, Inc. v. Porter*, 273 So. 3d 1025, 1028 n.1 (Fla. Dist. Ct. App. 2018).

For her part, Plaintiff cites *Valiente* in support of the proposition that clicking on a button whose text does not match the text of the relevant notice has been found insufficient to constitute acceptance. *See Valiente v. Nexgen Glob., LLC*, 2023 WL 6213583, at *12 (S.D. Fla. Sept. 25, 2023), *aff'd*, No. 23-13308, 2025 WL 3140480 (11th Cir. Nov. 10, 2025) (citing *Berman*, 30 F.4th at 857) (emphasis added). Yet in *Valiente*, the court did not say anywhere the problem was the text of the button not matching the notice; the problem was the text of the notice nowhere referenced the Terms of the agreement that contained the arbitration provision, nor did it link anywhere to them.

As for the instant case, the Court finds that a reasonably prudent person would have understood that by clicking the button directly below the hyperlinked text, which was the only button on the screen that could have been clicked in order to continue completing the transaction, assent was being given to the hyperlinked TOU.

## CONCLUSION

In conclusion, the Court finds both that the text hyperlinked to the terms and conditions was sufficiently conspicuous to put a reasonable person on inquiry notice of the same and that Plaintiff manifested his assent to the terms and conditions by clicking the button above the text that read, "By clicking the 'Pay' button below, you agree to our Terms of Use and acknowledge having read our Privacy Notice."

[*THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK*]

For the reasons above, it is hereby **ORDERED AND ADJUDGED** that:

1. The Motion [ECF No. 20] is **GRANTED**.

2. This action is **STAYED** and shall be **ADMINISTRATIVELY CLOSED** pending completion of arbitration pursuant to the Arbitration Agreement.

3. Every ninety (90) days following the date of this Order, the parties are directed to jointly file status reports apprising the Court of the status of the dispute resolution process.

4. Any notice of settlement must be jointly signed.

**ORDERED** in Chambers in West Palm Beach, Florida, this 29th day of July 2026.



ED ARTAU
UNITED STATES DISTRICT JUDGE

Copies served:
Philip L. Fraietta
Bursor & Fisher, P.A.
50 Main Street, Suite 475
White Plains, NY 10606
Email: pfraietta@bursor.com

Stefan Bogdanovich
Bursor & Fisher, P.A.
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
sbogdanovich@bursor.com

Eleanor Rose Grasso
Bursor and Fisher PA
1330 Avenue of the Americas
New York, NY 10019
egrasso@bursor.com

Jesse Stolow
Buchanan Ingersoll and Rooney
2 South Biscayne Blvd, Suite 1500
Miami, FL 33131
jesse.stolow@bipc.com

Aarti Reddy
Cooley LLP
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111

areddy@cooley.com

Christopher M. Andrews
Cooley LLP
55 Hudson Yards
New York, NY 10001
candrews@cooley.com

Hala A Sandridge
Fowler White Boggs P.A.
501 E. Kennedy Blvd., Suite 1700
Tampa, FL 33602
hala.sandridge@bipc.com